**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

DAVID ANDREW BARDES,

        Plaintiff,

    v.

GEORGE WALKER BUSH, et al.,

        Defendants.

Case No. 1:22-cv-290

Cole, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

On May 26, 2022, Plaintiff David Andrew Bardes paid the requisite filing fee and filed suit against multiple individual and corporate defendants.  (Doc. 1).  Two of three pending motions to dismiss have been referred to the undersigned for initial review.  (Notation Order of 8/23/2022).   For the reasons that follow, the undersigned now recommends that the referred motions to dismiss filed by Defendants Alphabet, Inc., Lawrence Edward Page, Apple, Inc. (*see* Docs. 11, 12), be GRANTED.  In addition, the undersigned recommends that a third motion to dismiss filed by Defendant Microsoft Corporation be granted and that all remaining motions filed by Plaintiff be denied.  As explained below, Plaintiff's complaint is subject to *sua sponte* dismissal with prejudice under the Court's own authority.

    **I.    Background**

Plaintiff's complaint identifies eight individual and corporate defendants: former President George Walker Bush, Richard Bruce Cheney, William Henry Gates, III, Microsoft Corporation, Lawrence Edward Page, Alphabet, Inc., Timothy Donald Cook,

and Apple, Inc.  In addition, Plaintiff includes two individual defendants identified only as "John and Jane Doe."  He alleges that after being falsely accused in 2004 of failing to pay child support, he was the victim of "Cold Cell" torture in an unspecified jail.[1] (Doc. 1 at PageID 2).  Plaintiff alleges that while jailed, he suffered "unspeakable pain" until he fell "into [a] hypothermic coma" and was "mistakenly declared…dead." (*Id*.)  Following his release, Plaintiff alleges he began researching "punishment holding cells" and learned of widespread use of "Cold Cell" torture by former President Bush and others.  (*Id*.)  Plaintiff alleges that he "blew the whistle" by publishing a book and operating a website that "chronicled all of [his] research on Cold Cell torture" and associated murders. (*Id.* at PageID 1, 3, 6).

As best the undersigned can discern, Plaintiff sincerely believes that former President George W. Bush and other former or current government officials, along with three large corporations and their current or former CEOs, are trying to silence his research and writings, including through attempts to kill him.  He also appears to believe that Defendants and others have previously taken retaliatory actions and conspired to prevent him from obtaining legal redress.  Plaintiff generally alleges that Defendants have colluded or conspired with former President Bush in a manner that has led to the dismissal of multiple prior lawsuits and appeals, and clandestine efforts by CIA or other government agents to befriend him, to pay him off, to dig up dirt on him, to prosecute him, and/or to physically harm and murder him.[2]  (Doc. 1 at PageID 5-8).  Invoking this Court's diversity jurisdiction, Plaintiff seeks "$17 billion dollars in compensatory damages, and triple that

---

[1] In prior judicial proceedings, the jail is identified as being located in Charleston, South Carolina.
[2] Notwithstanding these allegations, Plaintiff has not named any CIA or other government agents as defendants other than the former U.S. President and his former Vice President.

amount in extraordinary damages" from all defendants for "the reckless infliction of emotional distress, among other things." (*Id*. at ¶¶49, 51, PageID 10).

On July 14, 2022, Defendant Alphabet, Inc. and Lawrence Edward Page (jointly referenced as "Alphabet") filed a motion to dismiss. (Doc. 11). Alphabet's motion seeks dismissal under Rule 12(b)(6) based upon Plaintiff's failure to state any claim. In addition and in the alternative, Alphabet argues that this Court lacks personal jurisdiction over the Alphabet defendants, and that venue does not lie in the Southern District of Ohio.

On July 15, 2022, Apple, Inc. ("Apple") also filed a motion to dismiss. (Doc. 12). Apple's motion points out that Plaintiff filed a prior lawsuit in this Court on September 20, 2021 that contained substantially identical allegations. *See generally*, *Bardes v. United States*, Case No. 1:21-cv-598-DRC-KLL. Apple's motion therefore seeks dismissal with prejudice under Rule 12(b)(6) based upon the doctrine of claim preclusion, as well as for failure to state a claim. Additionally, Apple seeks dismissal for lack of personal jurisdiction, for improper venue, and for insufficient service of process.

Microsoft Corporation ("Microsoft") filed the third pending motion to dismiss on August 26, 2022.[3] (Doc. 25). Microsoft's motion discusses Plaintiff's "long history of filing frivolous lawsuits based on the same or similar allegations" as those contained in this case. (*Id*. at PageID 304). In addition to seeking dismissal for failure to state a claim under Rule 12(b)(6), Microsoft seeks dismissal for insufficient service of process.

Before addressing the pending motions, the undersigned takes judicial notice of six prior cases prosecuted by Plaintiff that contain similar or closely related allegations.

---

[3]The first two motions to dismiss were formally referred to the undersigned prior to the date that Microsoft filed its motion. Because Microsoft's motion so closely aligns with the other two motions to dismiss, the undersigned has included a recommendation that Microsoft's motion also be granted.

In 2008, Plaintiff filed his first federal lawsuit in South Carolina based upon allegations concerning his alleged cold cell torture in a South Carolina jail. That case was partially dismissed at the outset, with other claims against a sheriff dismissed on summary judgment. *See*, *e.g.*, *Bardes v. Magera*, 2:08-CV-487-PMD-RSC, 2009 WL 3163547 (D.S.C. Sept. 30, 2009) (dismissal of all claims against all defendants except sheriff); *Bardes v. Cannon, Jr.*, 2:08-CV-487-PMD-RSC, 2010 WL 3169614 (D.S.C. Aug. 9, 2010) (adopting R&R and granting summary judgment on claims that sheriff was vicariously liable for subjecting to cold cell torture); *see also id*. at 2010 WL 3169832 (D.S.C. June 18, 2010) (R&R). Plaintiff filed a second federal lawsuit in South Carolina in 2010, which case was dismissed based upon principles of res judicata. See *Bardes v. South Carolina,* C.A. No. 2:10-559-PMD-RSC, 2010 WL 1498190 (D.S.C. March 13, 2010) (R&R recommending sua sponte dismissal despite payment of full filing fee based on lack of subject matter jurisdiction and prior civil case); *id*., 2010 WL 1498190 (D.S.C. Apr. 12, 2010) (adopting R&R and dismissing based upon principles of res judicata).

Plaintiff filed a third similar lawsuit in the Middle District of North Carolina.[4] Noting the similarity of allegations to his South Carolina cases, that federal court also dismissed based upon the doctrines of res judicata and collateral estoppel. *See e.g.*, *Bardes v. South Carolina*, No. 1:11-cv-999-CCE-LPA, 2013 WL 3864405 at *6 (M.D.N.C. July 24, 2013) (observing that Plaintiff's complaint "reflects the delusional, wholly incredible allegations of someone suffering from mental illness," but also recommending dismissal

---

[4]Plaintiff has engaged in additional unrelated litigation, including a pro se case filed against a former employer in the Middle District of North Carolina, in which judgment was entered in favor of the defendant. *See Bardes v. Mass. Mutual*, Case No. 11-cv-00340-CCE-JLw (MD.N.C. April 28, 2014), *aff'd* Case No. 14-1560 (4th Cir . Nov. 6, 2014).

based upon res judicata and/or collateral estoppel), adopted on August 21, 2013, *aff'd* Case No. 13-2133 (4th Cir. Feb. 7, 2014).

In 2015 and again in 2017, Plaintiff filed two more similar lawsuits in the Western District of North Carolina. In *Bardes v. Auld*, Civil No. 1:15-CV-00214-MR-DLH, 2015 WL 5796466 (W.D.N.C., Oct. 2, 2015), *aff'd* Case No. 15-2396 (4th Cir. Jan. 19, 2016), the court again dismissed Plaintiff's suit as legally frivolous. The court held that Plaintiff's claims, seeking monetary damages for injuries allegedly sustained as a result of "brutal hypothermic torture" that occurred while he was being held in the Charleston County Detention Center, were barred by the doctrines of res judicata and collateral estoppel. *See id.* ("The patency of these barriers to this action renders it legally frivolous.").

After Plaintiff filed a second suit in the Western District of North Carolina (his fifth similar suit in all), the court again listed his prior cases and pointed out that the last three had been dismissed based upon res judicata and/or collateral estoppel. The court then succinctly concluded: "For the same reasons and based on the same authority cited in those decisions, the doctrines of res judicata and collateral estoppel also bar the Plaintiff from re-litigating those issues in this case." *Bardes v. US Courts*, Civil Case No. 1:17-cv-00089-MR-DLH, 2017 WL 3402080, at *1 (W.D.N.C. Aug. 8, 2017) (dismissing case based on allegations of "hypothermic torture" that allegedly occurred while plaintiff was being held as a detainee in Charleston, South Carolina). Because it was the second such case in that district, that court expressly warned Plaintiff "that future frivolous filings will result in the imposition of a pre-filing review system." *Id.*, 2017 WL 3402080 at *3. Heeding that warning, Plaintiff did not again file suit in the Western District of North Carolina.

Plaintiff instead filed a sixth suit containing similar allegations in this Court.[5]  *See Bardes v. United States*, Case No. 1:21-cv-598-DRC-KLL.  The Court dismissed the complaint based upon Plaintiff's failure to state a claim for mandamus relief as a matter of law, rendering his complaint legally frivolous under the screening standards set forth in 28 U.S.C. § 1915(e)(2)(B).  *Id.*[6]  U.S. District Judge Cole summarized Plaintiff's prior allegations as follows:

> Bardes alleges that in 2006, he "was falsely accused of not paying [his] child support" and placed in jail. (Doc. 3, #68). While there, Bardes states he was detained in a "cold punishment holding cell," where he was subjected to "very cold" temperatures until he "lost consciousness from hypothermia." (*Id.*). When he was released, Bardes attempted to file multiple civil rights lawsuits in federal court, alleging that the inhumane conditions to which he was exposed were a form of torture. (*Id.* at #68-70). However, Bardes states that his efforts were often thwarted because the George W. Bush administration was "repeatedly torturing to death innocent victims in [the] war on terror." (*Id.* at #68). Consequently, "every federal judge instantly dismissed torture lawsuits to protect George W. Bush, Dick Cheney, and the few CIA torture agents from being sued[.]" (*Id.*).
>
> Bardes states that, in recent years, the courts have corrected course and "inmates no longer die[ ] from hypothermia." (*Id.* at #70). However, Bardes also maintains that those responsible for this alleged scandal have never been held criminally accountable. (*Id.* at #70-71). Accordingly, Bardes now seeks a writ of mandamus to compel the executive branch to prosecute former President Bush and other alleged "bad actors for murder and torture." (*Id.* at #71).

*Bardes v. United States*, Case No. 1:21-cv-598-DRC-KLL, 2021 WL 6063286, at *1 (S.D. Ohio, Dec. 21, 2021) (adopting R&R, dismissing lawsuit and denying leave to proceed *in forma pauperis* on appeal); *see also generally*, *Bardes v. United States*, 2021 WL

---

[5]According to the complaint, Plaintiff currently resides in Walton, Kentucky, a physical location that is relatively close to this Court.

[6]Plaintiff appealed the dismissal but the Sixth Circuit affirmed.  *See* Sixth Circuit Case No. 22-3063 (6th Cir. Aug. 3, 2022).  In a responsive memorandum filed in this Court, Plaintiff complains that 23 federal judges he has encountered (including those in the Sixth Circuit) "are vehemently and adamantly protecting George Walker Bush and his band of murderers from our nation's well-established laws against repeated brutal torture and heinous murder."  (Doc. 22 at 7-8, PageID 292-293).

4621568 at *3 (S.D. Ohio, Oct. 7, 2021) (R&R, discussing allegations that "[t]hree Presidents and a dozen CEO's have now been compromised protecting George W. Bush from our laws."); *accord Bardes v. United States*, 2022 WL 219333, at *1 (S.D. Ohio Jan. 25, 2022) (R&R recommending denial of motion for leave to proceed *in forma pauperis* on appeal), adopted at 2022 WL 714232 (S.D. Ohio March 10, 2022).

The instant complaint represents Plaintiff's seventh iteration of nearly identical allegations, including the five prior cases filed in North Carolina and South Carolina and the sixth similar case filed in this Court. In his most recent response to Microsoft's motion to dismiss, Plaintiff maintains that he is no longer seeking damages based upon the conspiracy to prevent him from obtaining legal redress for his past torture, and only repeated the prior allegations as "background information." (Doc. 22 at 7, PageID 292). However, the complaint speaks for itself. Most of the complaint (the first eight pages of the 10-page complaint), as well as the first 44 of the 47 page single-spaced Exhibit A to the complaint,[7] are comprised of the same "background" allegations previously litigated.

Plaintiff attempts to differentiate his current lawsuit. "My current claims against the CEO's and public companies stems from their repeated efforts to kill me. Which I describe in the complaint and Exhibit A *multiple times*." (*Id.,* emphasis added.). Plaintiff characterizes his current complaint as containing allegations that:

> My CEO defendants used their "corporate tools to monitor me" to the point of "recruiting killers nearby me" to engage in "two concentrated periods" of "trying to kill me," causing the "reckless infliction of emotional distress" that "took its toll" each ending with "extended hospital stays."

---

[7]Exhibit A chronologically summarizes Plaintiff's alleged recordings of website activity and interpretations of that activity between September 2017 and May 2019. In his last responsive memorandum opposing dismissal, Plaintiff suggests that the instant lawsuit limits his request for recovery to two time periods. However, only the first time period is referenced at all in Exhibit A. Specifically, at the end of Exhibit A, Plaintiff alleges that on May 25, 2019, on-line meetings began between Bill Gates, China, Larry Page, the German "CIA center", Facebook Mark Z., and Larry Page "which preceded the killing. I was sacrificed to death to protect Satan's most valuable demons." (Doc. 1-1 at 45, PageID 55).

(Doc. 22 at 8, PageID 293).

Contrary to Plaintiff's contention, the complaint contains no factual details to support his conclusory assertion of "repeated efforts to kill me."  Rather, the complaint alleges only that "website traffic revealed efforts to recruit killers nearby," in late May 2019, at which point Plaintiff allegedly "fled Brevard, North Carolina for northern Michigan." (Doc. 1 at 8, ¶ 41, PageID 8).  He refers to unspecified "horrors" that allegedly occurred from 5/29/2019 through 10/29/2019 and from 4/1/2021 through 7/2/2021 that were "so severe that I hesitate to describe at this point," but includes no other description other than stating that each period ended with Plaintiff's "extended hospital stays."  (*Id*. at PageID 8-9).  The only other factual allegation that may be connected to more recent events is an allegation that Plaintiff lost ownership of his website "to George W. BUSH" and/or China, before he was able to re-establish his website under a new domain name. (*Id*. at PageID 9).

For the reasons that follow, Plaintiff's latest lawsuit should be summarily dismissed.

## II.    Analysis

### A.  Authority to Dismiss Legally Frivolous Cases *Sua Sponte*

Many pro se litigants seek to file their complaints *in forma pauperis*, or without payment of a filing fee.  In such cases, Congress has authorized Courts to conduct an initial evaluation of the complaint prior to authorizing service on any defendant.  *See* 28 U.S.C. § 1915(e).  In fact, Plaintiff's last case in this Court was dismissed based upon those statutory screening standards.  However,  Plaintiff paid the full filing fee for this case, thereby avoiding initial statutory screening under § 1915(e).  Nevertheless, this

Court retains the authority to dismiss frivolous lawsuits *sua sponte* under *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999). The instant case is legally frivolous on multiple grounds.

### B. Plaintiff is Barred from Re-litigating the Same Allegations and Claims

The most obvious reason for summary dismissal is the fact that this case represents Plaintiff's seventh federal lawsuit concerning the same core allegations. Re-litigation of the same issues is barred by the doctrines of collateral estoppel and/or res judicata, otherwise known as issue preclusion and claim preclusion.[8]

In his current complaint, Plaintiff invokes diversity jurisdiction. The Supreme Court has held that federal courts sitting in diversity should apply "the law that would be applied by state courts in the State in which the federal diversity court sits" so long as the state rule is not "incompatible with federal interests," meaning that this Court should look to Ohio law on the issues of issue or claim preclusion. *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508-09, 121 S.Ct. 1021 (2001); *accord Product Solutions International, Inc. v. Aldez Containers, LLC*, 46 F. 4th ___, 2022 WL 3585013, at *2 (6th Cir. Aug. 22, 2022).[9] It is worth noting, however, that both Ohio law and federal law preclude re-litigation of any issue previously litigated, even if based on a different cause of action. *See, e.g., In re Trost*, 510 B.R. 140, 150-151 (W.D. Mich. 2014); *State ex rel.*

---

[8]In *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984), the United States Supreme Court expressed its preference for usage of the terms "issue preclusion" and "claim preclusion" to refer to the preclusive effect of a prior judgment, rather than the more common terms of "collateral estoppel" and "res judicata." The Sixth Circuit has expressed the same preference, *Heyliger v. State University and Community College Sys. of Tenn.*, 126 F.3d 849, 851-52 (6th Cir. 1997), but the Latin phrases remain widely used.

[9]Notwithstanding Plaintiff's invocation of diversity jurisdiction, federal law may still apply because Plaintiff's prior six cases all were litigated in federal court including in this district, and his last case was based on federal law. *See Askew v. Davidson Cty. Sheriff's Office*, No. 3:19-cv-00629, 2020 WL 587424, at *3 (M.D. Tenn. Feb. 6, 2020) (applying federal law where prior case was in same federal court).

*Nickoli v. Metroparks*, 124 Ohio St. 3d 449, 453, 923 N.E. 2d 588 (Ohio 2010).

It is true that Plaintiff's successive cases contain slight variations in the identities of the defendants and legal theories. But, while issue preclusion is generally limited to identical issues, claim preclusion or res judicata bars Plaintiff's "new and improved" claims. *See generally O'Nesti v. DeBartolo Realty Corp.*, 113 Ohio St. 3d 59, 862 N.E.2d 803, 806 (Ohio 2007). Thus, claim preclusion bars not only those claims previously adjudicated between the same parties or their privies, but also bars new claims if they arise out of the same transaction or occurrence and <u>could have been litigated</u> in the first action. *See, e.g. Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997). Cases barred by claim preclusion are subject to dismissal for failure to state a claim under Rule 12(b)(6). *Helfrick v. Metal Container Corp.*, 102 Fed. Appx. 451, 452 (6th Cir. 2004).

For the sake of judicial economy, the undersigned focuses the analysis of claim preclusion in this case on Plaintiff's last federal case in this Court. *See* Case No. 1:21-cv-598-DRC-KLL. As Defendant Apple points out, the primary differences between the two complaints are: (1) Plaintiff's prior action sought declaratory relief in the form of a writ of mandamus; and (2) he previously named only the United States as a defendant. In this case by contrast, Plaintiff seeks monetary relief and has named two former government officials (former President Bush and former Vice President Cheney), along with Alphabet, Microsoft and Apple, and the corporate defendants' former or current CEOs (Messrs. Page, Gates, and Cook).

Despite these differences, this case and Case No. 1:21-cv-598-DRC-KLL arise out of the same set of operative facts. In his last case, Plaintiff included identical allegations[10]

---

[10]For example, the 47-page single-spaced "Exhibit A" attached to the complaint in the above-captioned case is <u>identical</u> to the "Exhibit A" attached to the complaint in Case No. 1:21-cv-598-DRC-KLL. The

and specifically requested the issuance of an order "for the Executive Branch to charge and prosecute" the former President "and his group of bad actors" for "murder and torture." Case No. 1:21-cv-598-DRC-KLL (Doc. 3 at 5, PageID 71).  Among the "bad actors," Plaintiff identified "George W. Bush, Dick Cheney, and a finite group of CIA officers," along with "[t]hree Presidents and a dozen CEO's [who] have been compromised protecting George W. Bush." (*Id*. at ¶¶ 1, 2).  In the identical Exhibit A in both cases, Plaintiff specifically names the same individuals and corporations (now identified as Defendants) alleging that they were among those who visited and/or interfered with Plaintiff's website. (*Compare* Case No. 1:21-cv-598-DRC-KLL, Doc. 3-1 with Case No. 1:22-cv-290-DRC-SKB, Doc. 1-1).

Just as the addition of new claims does not prevent dismissal on res judicata grounds, the addition of "new and improved" target Defendants does not preclude summary dismissal.  Claim preclusion remains appropriate if a plaintiff could have named a party in the prior lawsuit but did not.  *See Southall v. Holland*, 2021 WL 396688 at *6 (M.D. Tenn. Feb. 3, 2021); s*ee also generally, Randles v. Gregart*, 965 F.2d 90, 93 (6th Cir. 1992) (per curiam) (upholding dismissal of successive complaint against new defendants, collecting cases and citing generally *United States v. Mendoza*, 464 U.S. 154, 158-59 (1984); *Parkland Hosiery Co. v. Shore*, 439 U.S. 322, 331(1979)); *see also Heritage Hills Fellowship v. Plouff*, 555 F. Supp. 1290, 1295-96 (E.D. Mich. 1983). In *Gregart*, the Sixth Circuit also cited with approval *Hazzard v. Weinberger*, 382 F. Supp. 225, 226-229 (S.D.N.Y. 1974), *aff'd*, 519 F.2d 1397 (2d Cir. 1975), in which the court held that nonmutual claim preclusion is appropriate when a pro se litigant brings repeated

---

complaints also contain many identical allegations.

actions upon the same operative facts with slight changes in legal theories and "cast of characters-defendants."

Additionally, Plaintiff's reformulation of his prior request for mandamus relief (directing the Executive Branch to criminally prosecute the former president and/or bad actors) into a new request for monetary damages from the former president and his alleged co-conspirators does not save this case from being dismissed as frivolous re-litigation.  A plaintiff must "advance all theories for every ground of relief in their first action or be forever barred from asserting it."  *Lavon Moore v. Hiram Twp.*, 988 F.3d 353, 363 (6th Cir. 2021) (additional citation omitted).  In short, dismissal is recommended because claim preclusion bars Plaintiff from re-packaging his prior allegations into a new civil lawsuit.

### C.  The Complaint is Subject to Dismissal as Fantastic or Delusional

This Court does not question the sincerity of Plaintiff's convictions, to which his website(s), book, and eight lawsuits in multiple federal courts over the past fourteen years attest.  Nevertheless, the undersigned cannot permit this factually frivolous case to proceed.  Under *Apple v. Glenn*, Plaintiff's allegations are simply too implausible to merit further development as a matter of law.  The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. *See, e.g.*, *Neitzke v. Williams*, 109 S.Ct. 1827, 1833, 490 U.S. 319, 328 (1989) (holding that courts may reject the truth of "fantastic or delusional scenarios, claims with which federal district judges are all too familiar."); *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678,

12

129 S.Ct. 1937 (2009); a*ccord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007) ("[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions." (internal quotation marks and citations omitted)). An action is factually frivolous when the allegations rise to the level of the irrational or "wholly incredible." *Denton v. Hernandez*, 112 S.Ct. 1728, 1733, 504 U.S. 25, 33 (1992).

Without the benefit of expert witnesses to testify to what is technologically provable, the undersigned accepts that it may be theoretically possible for one or more of the Defendants to track Plaintiff's location through his various computer devices and to attempt to hire clandestine operatives to kill him, but nevertheless finds Plaintiff's allegations to be irrational, and "highly unlikely to be true." *See Robinson v. Love,* 155 F.R.D. 535, 535 (E.D.Pa.1994). "[I]f the allegations contained in the complaint, while theoretically within the realm of the possible, stand genuinely outside the common experience of humankind, such claims may also be dismissed as irrational or wholly incredible." *Id*. at 536; *see also Dekoven v. Bell*, 140 F.Supp.2d 748, 763 (E.D. Mich. 2001) (dismissing delusional complaint despite the "prodigious amounts of time, energy, and disciplined effort to assembling [plaintiff's] proofs," and his "neatly typed" and "readable and comprehensible" exposition, due to fundamentally irrational content).

Plaintiff's allegations regarding an "underground criminal organization" being orchestrated by former President Bush, (*see* Doc. 14 at PageID 242), fall within the realm of the wholly incredible, a/k/a "fantastic or delusional" as a matter of law. Contrary to Plaintiff's beliefs, his interpretive website logs and conclusory allegations regarding communications among various Defendants and government agents trying to kill him fail

to set forth any rational factual details that would entitle him to a legal remedy.[11] And a complaint may be dismissed when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke,* 490 U.S. at 328-29; *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990).

"Federal courts routinely dismiss allegations regarding broad-based conspiracies of computer hacking, surveillance, tracking, and the like, as factually frivolous under §1915 where these allegations are fanciful, fantastic, delusional, irrational, or wholly incredible." *Nduka v. Williams*, No. 19-cv-4316, 2019 WL 5293649, *2 (E.D. Pa. Oct. 17, 2019) (collecting cases). For example, courts have found to be legally frivolous similar allegations that the FCC, FBI, and the NSA had wiretapped the plaintiff's home, including her cell phone and home phone, hacked her computer and tablet, installed cameras in her home, tampered with her mail, and disclosed information obtained from these efforts to third parties, *see Barnes-Velez v. Fed. Communication Comm'n*, 18-cv-634, 2018 WL 4178196, at *1-3 (M.D. Fla. May 8, 2018), *R&R adopted*, 2018 WL 4153937 (M.D. Fla. Aug. 30, 2018). The speculative and conclusory claims presented by Plaintiff in this lawsuit fall into this legal category. As another court put it: "It is clear that this Court is not the forum that can provide Plaintiff with the type of assistance [he] truly needs. Plaintiff's allegations are simply based on some paranoid or delusional fantasy and unsupported imaginings that Defendants… are engaged in an elaborate and massive criminal conspiracy to torture and torment [him]." *Marshall v. Stengel*, 2010 WL 1930172,

---

[11]Largely comprised of "background," Plaintiff's complaint lacks any coherent factual detail concerning what each Defendant is alleged to have done beginning in May 2019 or later. Although Plaintiff now argues that the "horrors" to which the complaint alludes refer to assassination attempts, the only allegations regarding such attempts are conclusory statements in Exhibit A, the highly interpretive, annotated summary of Plaintiff's alleged web site logs. (*See* Doc. 1-1). Even Plaintiff admits that he cannot identify "the actual identity" of visitors to his website. Instead, he asserts "default identities to a statistical significance of near certainty" based on his personal analysis and opinion. (Doc. 1-1 at 3, PageID 13).

at *3 (W.D. Ky. May 12, 2010).

### D.  Lack of Venue in this Court Under Rule 12(b)(3)

In their joint motion to dismiss, Defendants Alphabet and Cook argue that venue does not lie in this district.  The undersigned agrees.  Venue in federal court is proper in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

It is a plaintiff's burden to establish "proper venue after an objection to venue has been raised." *513 Ventures, LLC v. PIV Enterprises, Inc*., No. 1:11-CV-573, 2012 WL 995277, at *5 (S.D. Ohio Mar. 23, 2012) (citing *Centerville ALF, Inc. v. Balanced Care Corp*., 197 F. Supp. 2d 1039, 1046 (S.D. Ohio 2002)).  In the case presented, Plaintiff does not argue that any Defendant is a resident of Ohio or that he himself is a resident. Instead, Plaintiff appears to argue that "a substantial part of the events … giving rise to the claim occurred" in this district.  See 28 U.S.C. § 1391(b)(2).  In opposition to the Defendants' motion, Plaintiff asserts:

As I referenced in my complaint, both concentrated periods of retaliation against me occurred in Cincinnati, and each ended with extended stays in the University of Cincinnati Hospital. The injuries occurred in Ohio. I am in the right court. This court has jurisdiction.

(Doc. 14 at 3, PageID 243).  In a later responsive memorandum, Plaintiff adds:

I had Tim COOK tracking my iPad, I had Bill GATES tracking my Window's laptop, and Larry PAGE tracking my Android cell phone, each feeding back

15

information to the CIA and George Walker BUSH, during the two concentrated periods of trying to kill me, each ending in Cincinnati, Ohio.

(Doc. 22 at 7, PageID 292).

Again, the complaint stands for itself.  Contrary to Plaintiff's argument, the complaint contains no reference whatsoever either to the University of Cincinnati Hospital or to any other location in Ohio where "a substantial part of the events" occurred.  Rather, the complaint alleges only that Plaintiff suffered unspecified "horrors" over two discrete periods of time in 2019 and 2021.  (Doc. 1 at PageID 9).  With respect to locations, Plaintiff alleges that during the 2019 period, on May 29, 2019, he "fled Brevard, North Carolina for northern Michigan."  (*Id.* at PageID 8).[12]  Plaintiff presently resides in Kentucky.  The sole reference to *any* event in Ohio is to Plaintiff's prior lawsuit being filed in this Court.

Thus, the complaint is devoid of allegations that would suggest that venue is proper in this district. When a case is filed in the wrong division of a district court, the court either "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Here, dismissal is appropriate because justice does not require the transfer of a case that is factually and legally frivolous.  To transfer this case to any other court would create a substantial burden on the judicial resources of the receiving court, which would be tasked with the same review undertaken by this Court. *See*, *e.g.*, *Onuachi v. Master Builders, Inc.*, Case No. 1:19-cv-358-SJD-SKB, 2019 WL 2210797, at *2 (S.D. Ohio May 22, 2019) (dismissing frivolous case for lack of federal jurisdiction rather than transferring it for improper venue); *accord Emrit v. Trump*, Case No. 1:19-cv-18-MRB-SKB, 2019 WL 140107, at *3 (S.D.

---

[12]Even if Plaintiff had alleged that he received medical treatment in Ohio, that singular fact would not support venue because the location of treatment is not where a "substantial part of the events" is alleged to have occurred.

Ohio Jan. 9, 2019).

### E. Personal Jurisdiction Under Rule 12(b)(2)

Plaintiff invokes diversity jurisdiction. But Defendants' motions persuasively argue that Ohio's long-arm statute is insufficient to support the exercise of personal jurisdiction over any Defendant, such that dismissal is also required under Rule 12(b)(2). (*See generally* Docs. 11 and 12). As relevant here, personal jurisdiction over a non-resident defendant served outside the State of Ohio would obtain only if (1) the cause of action either arises out of the defendant's business activity within the state or (2) involves a tortious injury occurring or caused by conduct occurring within the state. *See* Fed. R. Civ. P. 4(k)(1)(a); *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000) (state law applies to personal jurisdiction analysis in diversity cases); Ohio Rev. Code § 2307.382. "When a plaintiff seeks to bring a defendant into Court under a long-arm statute, he must state sufficient facts in the complaint to support a reasonable inference that such defendant can be subjected to jurisdiction within the state." *Baltimore & Ohio R. Co. v. Mobile Tank Car Servs.*, 673 F. Supp. 1436, 1439 (N.D. Ohio 1987) (quoting *Block Indus. v. DHJ Indus.*, 495 F.2d 256, 259 (8th Cir.1974). In the above-captioned case, the complaint fails to include allegations that would support personal jurisdiction over any Defendant in the State of Ohio.

### F. Insufficient Service of Process Under Rule 12(b)(5)

Defendant Apple also points out that Plaintiff did not comply with the requirements to effectuate proper service under either Local Rules or Federal Rule of Federal Procedure 4, nor did he accomplish effective service under Ohio law. Instead, Plaintiff appears to have sent a single copy of the Summons and Complaint addressed to Tim

Cook (and not Apple) by Priority Mail from his home address.

In response to Apple's arguments, Plaintiff initially filed a motion seeking default judgment against Defendant Cook, arguing that Mr. Cook received <u>actual</u> notice of the suit, as did Apple through Plaintiff's mailing.  (Doc. 13).  Plaintiff filed a supplemental response in which he admits that he did not serve the Defendants in "the precise way" the rules require, and complains that those rules were not spelled out in the "Pro Se Guidebook." (Doc. 22 at 1, PageID 286; *see also id*. at 9, PageID 294) (complaining of "super-secret service rules purposely omitted from the Pro Se Guide Book the courts gave me, and never mentioned in the Rules of Civil Procedure, creating a well hidden trap for Pro Se litigants.").

The Pro Se Guidebook offered strictly as a "a general overview" and emphasizes to the pro se litigant that it "does not relieve you of your responsibility to comply with the Federal Rules of Civil Procedure, the Local Rules, General Orders, and/or procedures for each Judge."  *See generally* https://www.ohsd.uscourts.gov/pro-se-handbook.  The Guide's overview regarding service directs the pro se litigant generally to Federal R. Civ. P. 4, Local Rule 4.2, as well as to certain specific provisions such as service of a company under Rule 4(h), Fed. R. Civ. P.

The Guide explains that a litigant who does not proceed *in forma pauperis* is responsible for serving each Defendant in accordance with all applicable rules, and includes a short summary of a few provisions such as those relating to personal service and waiver.[13]  However, the Guidebook does not contain the text of every rule nor does

---

[13]With respect to waiver, the Guidebook further includes instructions for completing Service Form AO398 (Notice of a Lawsuit and Request to Waive Service of a Summons) and Form AO399 (Waiver of the Service of Summons).  (*Id*. at 36-39).

it attempt to summarize every provision. Rules 4(e)(1) and 4(h)(1),. Fed. R. Civ. P., specify the methods of service for individuals and corporations. The rules allow for service in accordance with state law "where the district court is located or where service is made." *Id.* Neither the fact that Plaintiff failed to notice that Rule 4 incorporates state law, nor his pro se status, excuse his obligation to properly serve each and every Defendant in this case. For the reasons stated in Apple's motion to dismiss, Plaintiff's service upon multiple defendants appears to have failed to comply with applicable rules and therefore was ineffective.

### G. Other Grounds Presented in Pending Motions to Dismiss

Some Defendants argue that the complaint fails to state a claim for emotional distress under Ohio law or any other cognizable claim against them <u>even if the factual allegations are accepted as true</u>. (*See*, *e.g.*, Doc. 11 at 2, 4-5, PageID 101, 103-04). Defendant Alphabet and Page further argue that Plaintiff has failed to adequately allege facts sufficient to justify piercing the corporate veil. The undersigned finds it unnecessary to reach these arguments, having determined that the Court need not accept wholly incredible and conclusory factual allegations as true, and having further determined that this suit should be dismissed on multiple other grounds including claim preclusion, lack of venue, lack of persona jurisdiction and/or lack of proper service.

### H. Motion to Dismiss by Microsoft

#### 1. Microsoft's Motion is Meritorious

Defendant Microsoft filed a third motion to dismiss that largely mirrors arguments made by other Defendants in their pending motions. Plaintiff filed a response in which he argues that Microsoft's motion is untimely and that Microsoft is in "default." (Doc. 26). In

response to Microsoft's claim preclusion arguments, Plaintiff maintains that his many prior lawsuits were improperly dismissed based upon the intervention of former President Bush "twist[ing] these judges himself, just to protect himself from our laws against the brutal torture and heinous murder of innocent victims." (*Id*. at 2, PageID 316)  However, for all of the reasons discussed above, the undersigned recommends that Microsoft's motion to dismiss be granted.

### 2. Plaintiff's Attack on Judge Cole's Dismissal of Case No. 1:21-cv-598

At the end of his response in opposition to Microsoft's motion, Plaintiff attacks Judge Cole's prior dismissal of Case No. 1:21-cv-598-DRC-KLL and denial of Plaintiff's motion for leave to appeal *in forma pauperis*.

> Judge Douglas R. Cole works for George Walker BUSH by his own signature evidenced in the record. I motion that Judge Douglas R. Cole recuse himself from this case, due to an obvious lack of impartiality, and assign a federal judge who will follow our Constitution and laws, without favoritism as to law and payments of corruption.

(Doc. 26 at 4, PageID 318).

Plaintiff has failed to file any formal motion seeking recusal, and any such motion would be before Judge Cole.  To the extent that the presiding district judge construes the referenced language as a motion seeking his recusal, 28 U.S.C. § 455(a) requires federal judges to recuse only if their "impartiality might reasonably be questioned," evaluated from an objective basis.  *See Liteky v. U.S*., 114 S.Ct. 1147, 1154, 510 U.S. 540, 548 (1994). An adverse prior ruling does not provide grounds for recusal.  *Id.* at 555; *see also United States v. Grinnell Corp.,* 384 U.S., 563, 583 (1966).  Indeed, recusal is not even required when a litigant files suit against a judge, as Plaintiff has threatened to do here.[14]  *See*

---

[14]Plaintiff's complaint expresses an intention to "later" name "Magistrate [Judge] Karen L. Litkovitz and Federal District Judge Robert (sic) R. Cole" as "John and Jane Doe defendants, and enjoined [sic] to this

*Owen v. United Way of Greater Cincinnati*, 2021 WL 1422265, at *3 (S.D. Ohio, April 15, 2021) (citing *Flint v. MetLife Ins. Co. Conn.*, 460 Fed. Appx. 483, 486 (6th Cir. 2011), additional citations omitted).

## I. Motions Filed by Plaintiff Bardes

In addition to three motions to dismiss filed by Defendants, Plaintiff has filed multiple motions seeking default judgments against Defendants Bush, Cheney, Microsoft and Gates. Plaintiff has also filed two motions that are construed as seeking default judgment against Defendants Apple and Cook. (*See* Docs. 5, 8, 10, 13, 15). Although the referenced motions have not been specifically referred, the undersigned nevertheless recommends that they be denied as procedurally moot following dismissal of this case. In addition, all motions for default judgment under Rule 55(b), Fed. R. Civ. P., are procedurally premature as such judgment cannot be entered prior to entry of default under Rule 55(a), which has not occurred. Last, if the motions are otherwise considered on their merits, the undersigned recommends that Plaintiff's motions be denied based upon the lack of valid service, improper venue, and the lack of any viable claim.

## III. Conclusion and Recommendations

Accordingly, it is **RECOMMENDED THAT:**

1. The motions to dismiss filed by Defendants Alphabet, Cook, Microsoft and Apple, (Docs. 11, 12, 25) should be **GRANTED**;

    a. In addition to the grounds advanced by the Defendants in their respective motions to dismiss, and for the reasons discussed above, this entire action

---

cause of action" based upon their prior adverse ruling. (Doc. 1 at 9-10, PageID 9-10). Any motion for leave to amend would not be well-taken as no amendment could cure the multiple reasons for dismissal of this case.

should be **DISMISSED *sua sponte* with prejudice** under Rule 12(b)(6).

b. If the Court declines the recommendation to dismiss with prejudice under Rule 12(b)(6), the undersigned alternatively recommends dismissal under Rule 12(b)(2) (lack of personal jurisdiction), Rule 12(b)(3) (lack of venue), and/or Rule 12(b)(5) (improper service)

2. Plaintiff's motions (Docs. 5, 8, 9, 10, 13, 15) all should be **DENIED** as moot in light of the recommended dismissal of this case.  If not denied as moot, all of Plaintiff's motions alternatively should be denied on their merits.

3. Plaintiff should be warned that any further frivolous filings in this Court may result in Plaintiff being declared a vexatious litigator and filing restrictions should be imposed.

       *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

DAVID ANDREW BARDES,

|                         |                        |
|-------------------------|------------------------|
|                         | Case No. 1:22-cv-290   |

        Plaintiff,                             Cole, J.

                                               Bowman, M.J.

    v.

GEORGE WALKER BUSH, et al.,

        Defendants.

<strong>NOTICE</strong>

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).